IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Jackson March 2, 2010

## WILLIAM EDWARD WATKINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 8282     Robert Jones, Judge**

**No. M2008-02098-CCA-R3-PC - Filed November 23, 2010**

The Petitioner, William Edward Watkins, appeals the Maury County Circuit Court's denial of his petition for post-conviction relief from his convictions for two counts of first degree felony murder and one count of attempted aggravated robbery, for which he is serving consecutive life sentences plus three years. In this appeal, the Petitioner contends that he is entitled to post-conviction relief because trial counsel was ineffective for failing to request the jury instructions on lesser included offenses and for failing to raise the issue in his motion for new trial in order to preserve the issue for appellate relief. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Stanley K. Pierchoski, Lawrenceburg, Tennessee, for the appellant, William Edward Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Kimberly L. Fields Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 25, 1995, the Petitioner was convicted of the first degree felony murders of Lamont Orr and Elizabeth Smith and the attempted aggravated robbery of Elwood Sinson. His convictions and sentences were affirmed on appeal. State v. William Edward Watkins and Jonathan Davis, No. 01C01-9701-CCA-R3-CD, Maury County (Tenn. Crim. App. Dec. 12, 1997), app. denied (Tenn. Sept. 21, 1998). The Petitioner filed a petition for post-

conviction relief on September 21, 1999, and after the appointment of counsel, an amended petition was filed. The court conducted an evidentiary hearing on July 9, 2008.[1]

This court's opinion on direct appeal states the facts of the Petitioner's convictions:

> On March 28, 1994, [the Petitioner] borrowed a gun from Lamont Orr. He met some friends at Columbia Gardens Apartments, and they began discussing a proposed plan to rob the Richland Inn. [Co-defendant] Davis approached the group and agreed to rob the Richland Inn. [The Petitioner] gave Davis the .22 caliber handgun and a ski mask, and they both walked towards the motel. The others in the group decided that they did not want to participate in any criminal activity and stayed behind.
>
> Elwood Sinson, a guest at the Richland Inn, was meeting a business associate in his room on the ground floor. As he was waiting for his associate to open the door, he saw Davis jump from a brick wall on the side of the parking lot and walk towards him. Davis quickened his speed and aimed the gun at Sinson and said, "your money or your life." Sinson was able to get inside the motel room before Davis could do anything further.
>
> After the failed robbery attempt at the Richland Inn, [the Petitioner] and Davis decided to rob Lamont Orr. They went to Orr's trailer, where he lived with his girlfriend, Elizabeth Smith. Orr left with them when [the Petitioner] and Davis told him that they were going to participate in a cocaine transaction. Orr drove [the Petitioner] and Davis to the parking lot of Brown's School. Upon arrival at the parking lot, Davis without any provocation shot Orr in the head. Orr was also shot a second time in the head and died as a result of these wounds. Although Orr was seen with 15-20 rocks of crack cocaine earlier that day, no drugs were found on his person after his death.

---

[1] The record suggests that the cause for the delay was that the Petitioner's original appointed counsel was temporarily suspended from the practice of law at some point, and other counsel was appointed to represent him.

Because Smith had seen Orr leave with them, [the Petitioner] and Davis returned to the trailer. Smith was fatally shot once in the head. Earlier that evening, Smith was seen with $100. No money was found at the trailer after the homicide, and there was also evidence that some cocaine was missing from the trailer. Davis was subsequently seen wearing rings which he claimed he had taken from Smith.

[The Petitioner] was arrested two days later on an unrelated forgery charge. After being questioned on the murders, [the Petitioner] gave a statement implicating himself and Davis in the attempted robbery of Sinson and the homicides of Orr and Smith. Davis subsequently confessed to the crimes as well.

Id., slip op. at 2-3.

At the post-conviction hearing, the Petitioner testified regarding the issues raised in his petition. He first alleged that counsel should have objected to the admissibility of his and his co-defendant's statements and redactions to those statements. He said his statement was coerced and that both his and his co-defendant's statements were untruthful. He said that he thought the redacted portions of the statements would have helped his defense and that counsel never provided him with a clear understanding of why some parts could be admitted and others could not. He acknowledged that the trial court denied his motion to suppress.

The Petitioner also testified that counsel failed to call several witnesses whom he wanted to testify at trial. Those witnesses included his grandmother, who would have testified about his state of mind and character; Jimmy Lowe, Leslie Carr, and Richard Cushing, who were present or nearby during the commission of the offenses and would have testified about the extent of his involvement; and Donny Ragsdale, who was the Petitioner's former cellmate and had claimed the Petitioner made inculpatory statements to him. The Petitioner acknowledged that there was a jury-out hearing at which Mr. Ragsdale testified for the Petitioner's co-defendant and that the trial court ruled that Mr. Ragsdale's testimony was inadmissible. The Petitioner said that he wanted counsel to recall Mr. Ragsdale and inquire into the reason the witness was willing to lie about the Petitioner but that counsel did not do so.

The Petitioner testified that counsel failed to communicate adequately with him or meet often enough to discuss his case. He said someone from the public defender's office visited him to prepare for trial two or three times for an hour or an hour and a half each time.

-3-

He said that he tried to communicate with the public defender's office through his grandmother but that the attorneys were out of town or in court when she called the office. He acknowledged that his attorney explained the basic trial strategy to him, although he said it was two or three days into the trial.

The Petitioner testified that he wanted to testify at trial to explain and minimize his involvement in the offenses but that counsel said, "We'll see" and never discussed it. The Petitioner claimed that Detective Don Rose was to blame for his participation in the robbery and murder. He said that Detective Rose questioned him about a forgery charge just days before the offenses. He theorized that had Detective Rose arrested him on the forgery charge, he would have been in jail and unable to be involved in the offenses.

On cross-examination, the Petitioner testified that he did not remember meeting with an investigator from his attorneys' office the day after he was arrested or having a preliminary hearing. The Petitioner said he met with his attorneys only three times before trial, but he could not recall the dates of those meetings. The Petitioner did not remember that his friend, L.J. Carr, testified for him at trial regarding the co-defendant's actions after the shooting. The Petitioner said he had wanted his grandmother to testify about the type of person he was and about the incident. He claimed he told her everything that happened. He acknowledged that his grandmother was not present during the offenses. He further elaborated that he wanted his grandmother to testify about his arrest and whether the police had a warrant. Despite his earlier acknowledgment that the trial court denied his motion to suppress his statement, he claimed that he did not remember that a suppression hearing was held regarding the arrest and his statement but that he would not be surprised if one took place.

The Petitioner testified that Jimmy Lowe would have been able to testify as to how the Petitioner looked during and after the offenses, but he acknowledged that Lowe also would have been able to testify that the Petitioner planned the robbery and gave Davis the gun and ski mask. The Petitioner stated that he wanted to call Donny Ragsdale to ask him why he was going to lie and say the Petitioner admitted his involvement, but he acknowledged that Ragsdale testified during a jury-out hearing that he was not getting anything in exchange for his testimony. The Petitioner said that he discussed with his attorneys which witnesses he wanted called and what their testimony would have been, but they "didn't get down to Q and A."

Asked if he was not able to meet with his attorneys very often because he escaped from jail, the Petitioner admitted that he escaped from jail two times between his arrest and trial. He admitted that the second time, he was confined in Florida and was gone from the Maury County Jail for almost two months and did not get back until ten days before trial.

The Petitioner said he did not contact his attorneys during the time he was in Florida because they did not accept collect calls. With regard to his testimony on direct examination that he wanted to testify at trial, the Petitioner admitted that, had he testified, he would have been cross-examined regarding the fact that he and his co-defendant split the money from the robbery and the cocaine taken from one of victims. He also acknowledged that he would have had to admit that he planned the robbery and provided the co-defendant with a map and gun.

The Petitioner's trial counsel testified that in 1994 and 1995, she was the acting public defender for the 22nd Judicial District and represented the Petitioner. She testified to the preparations she undertook before trial and recalled that the Petitioner was unavailable for a period of at least two months because he escaped from jail twice. She recalled that approximately four days after the Petitioner escaped, he was in jail in Florida. She said that she wrote a letter to the public defender in Florida asking that the Petitioner call her collect. She said that she talked to the Petitioner and that he told her to pursue the pretrial motions in his absence.

Trial counsel testified that co-counsel argued a motion to suppress the Petitioner's statement and that the Petitioner was not a good witness. Trial counsel said that the Petitioner's claim that his attorneys only met with him three times was false. She stated that her understanding of the witnesses the Petitioner mentioned was that they were not involved in the offenses but "were basically in a house that [the Petitioner] went to, after both homicides had occurred." Trial counsel said that there was no favorable testimony that could be gained from any of the potential witnesses and that she was not aware that the Petitioner asked her to call them.

Trial counsel testified that she would not have gone to trial without the Petitioner signing a written waiver of his right to testify. She said that if the Petitioner did not testify, "that was his choice." Counsel noted that at the time of trial, her understanding was that second degree murder was not a lesser-included offense of felony murder.

On cross-examination, trial counsel stated that she did not have specific recollection of any conversations with any of the Petitioner's potential witnesses but that her normal practice was to try to talk to any witness who might be a benefit to her client. Trial counsel acknowledged that she did not have a specific recollection of whether the Petitioner signed a written waiver of his right to testify and that there was not a waiver in the file. She explained that many things were missing from the file and that the file was out of her possession once she left the public defender's office.

On redirect examination, trial counsel read from a memorandum of an interview she had with the Petitioner in preparation for trial, in which she noted that the Petitioner "was emphatic that Richard [Cushing] and Jimmy [Lowe] [were] not involved in the murder." She said that based on that information, there was no reason to investigate those witnesses.

The Petitioner's co-counsel testified that he worked for the public defender's office in 1994 and 1995 and represented the Petitioner. He did not recall the Petitioner's saying that they needed to call the witnesses mentioned by the Petitioner during his testimony. Co-counsel said that Mr. Carr was the one witness they evaluated who they thought would add to the Petitioner's case. Co-counsel stated that they were never told that Mr. Cushing and Mr. Lowe were present at any time after the robbery plan was made between the Petitioner and the co-defendant. Co-counsel testified that he was certain he went over the Petitioner's right to testify and the ramifications of testifying and that the Petitioner said on more than one occasion that he did not want to testify.

Co-counsel testified that the transcript reflected that he urged the court to give a lesser-included offense instruction on criminally negligent homicide and especially aggravated robbery, but the court only gave a lesser-included instruction on reckless homicide. Co-counsel said that he did not think he requested an instruction on second degree murder because the controlling law at the time held that second degree murder was not a lesser-included offense of felony murder. He also noted that at the time, felony murder contained a reckless element and that he did not want to suggest to the jury through a second degree murder instruction that the Petitioner acted knowingly. He explained that the trial strategy was to demonstrate that although the Petitioner participated in the robbery, he had no idea his co-defendant would kill the victims. He said that based on this court's opinion in State v. Wayne M. Trusty, which had not yet been reversed by the Tennessee Supreme Court, they requested lesser included offense instructions for felony murder on the offenses of especially aggravated robbery and aggravated robbery. See State v. Wayne M. Trusty, No. 02C01-9307-CR-00170, Shelby County (Tenn. Crim. App. Oct. 12, 1994), rev'd, 919 S.W.2d 305 (Tenn. 1996). He said this strategy was more consistent with the facts of the case. He said they also requested an instruction for facilitation of felony murder, but the request was denied.

Co-counsel testified that they repeatedly tried to have the Petitioner's case severed from his co-defendant's but that the court denied the requests. One result of that denial was that the Petitioner's statement had to be redacted because it implicated the co-defendant. Co-counsel stated that another attorney took over the case after the ruling on the motion for new trial.

After the hearing, the post-conviction court denied relief, finding that the Petitioner's complaint about his statement being redacted was previously litigated; the Petitioner did not carry his burden of proof regarding the allegation that counsel met with him an inadequate amount of time; counsel was not ineffective for not calling the Petitioner's grandmother to testify at trial because her hearsay testimony would not have been admissible; counsel was not ineffective for not calling Donny Ragsdale who was "a loose cannon . . . [and] already inclined to give testimony detrimental to the [Petitioner]"; counsel was not ineffective for failing to call Jimmy Lowe, who could have implicated the Petitioner by placing him at the scene; counsel's failure to call Leslie Carr was not prejudicial because her testimony would not have been helpful to the Petitioner; and, accrediting the testimony of counsel, that the Petitioner did not carry his burden of proving that he did not waive his right to testify. With regard to the issues relevant to this appeal, the post-conviction court found that the trial court was not in error for failing to charge, nor was counsel ineffective for failing to request, instructions on the lesser-included offenses of felony murder because "such was not required at the time."

The burden in a post-conviction proceeding is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

The Petitioner contends that he is entitled to post-conviction relief based upon trial counsel's failure to request lesser included offense instructions for second degree murder, facilitation of felony murder, and criminally negligent homicide, and that counsel was ineffective for failing to preserve the issues for appellate review by raising them in the motion for a new trial because they would have been reversible error on appeal. The State counters that the Petitioner has not shown error in the trial court's denial of post-conviction relief. We agree with the State.

Because our inquiry involves evaluating trial counsel's performance at the time of the trial and the motion for new trial, we will evaluate their decisions under the law of lesser included offenses as it existed at the time of counsel's actions or inactions. See Wiley v. State, 183 S.W.3d 317, 326 (Tenn. 2006) (evaluating a petitioner's post-conviction claim of ineffective assistance of counsel in failing to request lesser included offense instructions by reviewing counsel's actions in light of the law of lesser included offenses as it existed at the time of the trial). First, a review of the pertinent dates is in order. The Petitioner committed the offenses on March 28, 1994. He was convicted on August 25, 1995, and he was sentenced on October 30, 1995. He filed an amended motion for new trial on July 24, 1996, and it was denied on August 13, 1996. The Petitioner filed his notice of appeal on August 13, 1996. This court's opinion on direct appeal was filed on December 12, 1997, and the Tennessee Supreme Court denied permission to appeal on September 21, 1998.

When the Petitioner's offenses occurred, felony murder required a "reckless" killing in the perpetration of, or attempt to perpetrate, an enumerated felony. T.C.A. § 39-13-202

(1991).[2]  Second degree murder required a "knowing killing of another."  T.C.A. § 39-13-210 (1991).

The trial court had the duty to charge the jury on all of the law that applied to the facts of the case.  See State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992) (citing State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975)).  Anything short of a complete charge would have denied the Petitioner his constitutional right to a trial by jury.  See State v. McAfee, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987).  At the time of the offense and the Petitioner's trial, the Code provided:

> It is the duty of all judges charging juries in cases of criminal prosecutions for any felony wherein two (2) or more grades or classes of offense may be included in the indictment, to charge the jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so.

T.C.A. § 40-18-110(a) (1997) (amended 2001, 2009).

Less than six months before the Petitioner's trial, this court held that under State v. Howard, second degree murder was not a lesser included offense of felony murder because second degree murder required a higher "knowing" culpable mental state than the "reckless" mens rea of felony murder.  See State v. Gilliam, 901 S.W.2d 385, 390-91 (Tenn. Crim. App. 1995) (applying the test of Howard v. State, 578 S.W.2d 83 (Tenn. 1979)); see also Wayne M. Trusty, slip op., rev'd, 919 S.W.2d 305 (Tenn. 1996).  Thus, in the Petitioner's case, trial counsel's failure to request a lesser included offense instruction on second degree murder was in accord with the law as it existed at the time of the trial.  Trial counsel and co-counsel testified that their understanding of the law was that second degree murder was not a lesser included offense of felony murder.  Co-counsel also said that the applicable version of the felony murder statute required a "reckless" mental state, and had they requested a lesser included offense instruction on second degree murder, the defense would have been asking the jury to find a more culpable mental state for second degree murder than was required for the greater, charged offense of felony murder.  Co-counsel said that the defense strategy was to show that the Petitioner may have been aware that he was going to be part of a robbery but that he had no knowledge a killing was going to take place.  He said that this was the basis for requesting lesser included offense instructions for the felony murder counts of especially aggravated robbery and aggravated robbery, which he said was in

---

[2] The General Assembly amended Tennessee Code Annotated section 39-13-202(a)(2), effective July 1, 1995, to remove the "reckless" language from the statute.

accord with this court's <u>Wayne M. Trusty</u> and <u>Gilliam</u> decisions. We hold that the trial court did not err in finding that the law at the time of the trial did not support a second degree murder instruction. The Petitioner is not entitled to relief on this basis.

With respect to the Petitioner's allegation that counsel should have requested lesser included offense instructions on facilitation of felony murder and criminally negligent homicide, co-counsel testified that he requested a facilitation of felony murder instruction. In addition, the record of the Petitioner's direct appeal, which was made an exhibit at the post-conviction hearing, reflects that co-counsel requested an instruction on criminal responsibility for facilitation of felony murder and criminally negligent homicide, both of which the trial court denied, although the court gave an instruction on reckless homicide. Because the record belies the Petitioner's claim that trial counsel did not request instructions on facilitation of felony murder and criminally negligent homicide, the Petitioner failed to demonstrate that he is entitled to relief.

We now consider the Petitioner's allegation that he was entitled to post-conviction relief because trial counsel was ineffective in failing to raise issues in the motion for new trial regarding the trial court's failure to instruct the jury on the lesser included offenses of second degree murder, facilitation of felony murder, and criminally negligent homicide. On direct appeal, the Petitioner contended that the trial court erred in failing to instruct the jury on second degree murder. This court held that the issue was waived because it was not raised in the motion for new trial. <u>See</u> <u>State v. William Edward Watkins and Jonathan Davis</u>, slip op. The issue was not raised on direct appeal with respect to the failure to instruct on facilitation of felony murder and criminally negligent homicide.

After the Petitioner's trial and before the motion for new trial was adjudicated, the Tennessee Supreme Court held in <u>State v. Trusty</u> that a defendant was entitled to jury instructions on all lesser included offenses and on all lesser grades or classes of the offense charged if the evidence would support a conviction for the offense. 919 S.W.2d 305, 311 (Tenn. 1996). Thus, <u>Trusty</u> encompassed offenses meeting the lesser-included offense definition from <u>Howard</u> as well as offenses located in the same statutory chapter and part of the Tennessee Code. <u>Id.</u>

We note that the supreme court's <u>Trusty</u> decision did not address second degree murder as a lesser included offense of felony murder. <u>See generally</u> <u>id.</u> It was not until after the Petitioner's direct appeal was final that the Tennessee Supreme Court held that second degree murder was a lesser grade offense of felony murder under <u>Trusty</u>. <u>See</u> <u>State v. Ely</u>, 48 S.W.3d 710, 722-23 (Tenn. 2001); <u>see also</u> <u>Wiley</u>, 183 S.W.3d at 326 (stating that second degree murder was a lesser grade of homicide under <u>Trusty</u>). Even though <u>Trusty</u> provided the basis for an instruction on second degree as a lesser included offense of felony murder,

the supreme court also said that instructions on lesser included offenses were required only "if the evidence supports guilt on those offenses." Trusty, 919 S.W.2d at 311. According to co-counsel's testimony, the defense theory was that the Petitioner had no knowledge the killings were going to take place. We fail to see how trial counsel can be said to be deficient for failing to seek a new trial on the basis of an omitted jury instruction that was inconsistent with the defense theory and the trial proof.

We also note that there was no direct proof at the post-conviction hearing about why trial counsel did not include the issue in the motion for new trial. Given the lack of evidence at the hearing that his attorneys disregarded or failed to consider the impact of the supreme court's Trusty ruling when they drafted the motion for new trial, we conclude that the trial court did not err in finding that the Petitioner failed to carry his burden of proving that counsel was deficient in failing to raise the second degree murder instruction issue in the motion for new trial.

With respect to the Petitioner's allegation of ineffective assistance related to trial counsel's failure to seek a new trial on the basis that the Petitioner was entitled to an instruction for facilitation of felony murder, we note that contrary to the Petitioner's argument, the amended motion for new trial raised the issue. The Petitioner's claim that counsel did not raise the issue is unsupported by the facts in the record, and he is not entitled to relief.

We consider last the Petitioner's allegation that trial counsel should have raised an issue in the motion for new trial that the trial court erred by failing to give a criminally negligent homicide instruction. The Petitioner makes no argument beyond a general allegation of counsel's ineffectiveness. In any event, the law at the time provided that no lesser included offense instruction was required when the evidence supported either the existence of the greater offense or no offense at all. See, e.g., Moorman v. State, 577 S.W.2d 473, 475 (Tenn. 1978). In this case, the Petitioner admitted his guilt of the robberies that were the predicate felonies for the two felony murder counts. The fact that the victims were killed was undisputed. The trial proof supported either a conviction of felony murder based upon homicides taking place as a part of the predicate robberies or an acquittal based upon a finding that the homicides and the admitted robberies were unrelated. Because the proof would not have supported the trial court's giving a criminally negligent homicide instruction, trial counsel cannot be said to have been ineffective in failing to seek a new trial on this basis. The Petitioner is not entitled to post-conviction relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE